UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

| | |
|---|---|
| CLAYTON BOUCHER, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | No. 2:19-cv-45 |
| v. ) | |
| ) | Judge Collier |
| JOHNSON CITY TENNESSEE, et al., ) | Magistrate Judge Steger |
| ) | |
| *Defendants.* ) | |

# **M E M O R A N D U M**

This dispute arises out of Plaintiff Clayton Boucher's arrest and subsequent charge for aggravated stalking. Plaintiff has sued Defendants, Johnson City, Tennessee ("Johnson City"), Shane Malone, individually and in his official capacity as a detective for the Johnson City Police Department ("Malone"), and Paul Miller, individually ("Miller"), pursuant to 42 U.S.C. § 1983 and under state law for false arrest and/or seizure, false imprisonment, reckless infliction of emotional distress, deliberate indifference, and failure to train and/or supervise. (Doc. 1.)

Defendants Johnson City and Malone ("Defendants") have moved to dismiss the claims against them. (Doc. 14.) Defendants assert that the existence of probable cause defeats each legal claim alleged against them and Plaintiff is precluded from relitigating the issue of probable cause based on either the contested preliminary hearing or the grand jury indictment. (Doc. 15.) Defendants further argue that even if Plaintiff's claims are not barred by issue preclusion, Defendant Malone, in his individual capacity, is entitled to either qualified immunity or absolute witness immunity. (*Id.*)

For the reasons set out below, the Court will **DENY** the motion to dismiss.

## I. BACKGROUND[1]

Plaintiff Clayton Boucher is a citizen and resident of Johnson City, Tennessee. (Doc. 1 ¶ 1.) Defendant Johnson City is a political subdivision of the state and operates the Johnson City Police Department. (*Id.* ¶ 2.) Defendant Malone is a detective for the Johnson City Police Department, and Defendant Miller is a probation officer in the State of Tennessee Probation and Parole Department. (*Id.* ¶¶ 3–4.)

On or about March 29, 2018, Plaintiff was arrested by Defendant Malone for aggravated stalking and subsequently charged for the offense. (*Id.* ¶ 5.) The aggravated stalking charge was based on the statements of the alleged victim to police. (*Id.* ¶ 7.) The victim claimed that an individual began stalking her in November 2017. (*Id.* ¶ 6.) Plaintiff, however, was being held in the Washington County Detention Facility as a pretrial detainee in November 2017. (*Id.* ¶ 8.) Plaintiff remained there until December 18, 2017, when he was released on supervised probation. (*Id.* ¶ 9.) Prior to the arrest, Defendant Malone interviewed Plaintiff regarding the aggravated stalking allegations. (*Id.* ¶ 10.) Plaintiff denied having had any contact with the individual and suggested that this might be a case of mistaken identity given Plaintiff's incarceration from November to December 2017. (*Id.* ¶ 10.) Despite having information that Plaintiff was incarcerated when the stalking began, Defendant Malone arrested Plaintiff on March 29, 2018. (*Id.* ¶ 12.)

On April 5, 2018, Defendant Miller filed a violation of probation warrant against Plaintiff based on the aggravated stalking charge. (*Id.* ¶ 11.) Plaintiff explained to Defendant Miller that

---

[1] This summary of the facts accepts all of the factual allegations in Plaintiff's Complaint as true. *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

Plaintiff could not be the perpetrator given his incarceration at the time the stalking allegedly began, but Defendant Miller still filed the warrant. (*Id.* ¶ 11.)

On December 4, 2018, Plaintiff's charge for aggravated stalking was dismissed in open court. (*Id.* ¶ 12.) Upon his release, Defendant Miller commented, "looks like you just spent eight months in jail for nothing." (*Id.* ¶ 13.)

Plaintiff has brought four claims against Defendant Malone for false arrest and/or seizure, false imprisonment, reckless infliction of emotional distress, and deliberate indifference. (*Id.* ¶¶ 14–26.) Plaintiff filed claims against Defendant Miller for false imprisonment, deliberate indifference, and reckless infliction of emotional distress. (*Id.* ¶¶ 27–36). Plaintiff also filed a claim of deliberate indifference against Defendant Johnson City for failure to train and/or supervise Defendant Malone. (*Id.* ¶¶ 37–40.)

## II. STANDARD OF REVIEW

A party may move to dismiss a claim for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion to dismiss, a court must first accept all of the complaint's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). All ambiguities must be resolved in the plaintiff's favor. *Carter by Carter v. Cornwell*, 983 F.2d 52, 54 (6th Cir. 1993) (citing *Jackson v. Richards Med. Co.*, 961 F.2d 575, 577 (6th Cir. 1992)). Bare legal conclusions, however, need not be accepted as true. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After assuming the veracity of factual allegations and construing ambiguities in the plaintiff's favor, the Court must then determine whether those allegations "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Sufficient

factual allegations are pled when a court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged" and there is "more than a sheer possibility that a defendant has acted unlawfully." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To determine whether the complaint satisfies facial probability, the court must "draw on its judicial experience and common sense." *See id.* at 679.

If a party presents matters outside the pleadings in connection with a pending motion to dismiss, the court must either exclude those matters from consideration or treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d). Documents attached to the pleadings are considered part of the pleadings, Fed. R. Civ. P. 10(c), and a court's consideration of documents referenced in a complaint that are integral to the claims does not convert a motion to dismiss into a motion for summary judgment. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007). A court may also consider public records attached by a defendant in resolving a motion to dismiss. *Watermark Senior Living Retirement Cmty., Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 425 (6th Cir. 2018); *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017).

## III.  DISCUSSION

The Defendants contend that each of Plaintiff's legal claims against them should be dismissed as a matter of law because probable cause was established at a contested preliminary hearing and by the grand jury indictment. (Doc. 15.) Defendants assert Plaintiff is thus precluded from relitigating the issue of probable cause. (*Id.*) Even if Plaintiff can relitigate the issue of probable cause, Defendant Malone claims he is entitled to qualified immunity or absolute witness immunity. (*Id.*)

Plaintiff asserts that the preliminary hearing should not be given preclusive effect because Defendant Malone, the arresting officer, did not testify and thus Plaintiff's attorney did not have an opportunity for cross examination. (Doc. 22.) Plaintiff argues this was particularly harmful to his ability to contest probable cause because Defendant Malone was one of the persons with knowledge of Plaintiff's November 2017 incarceration. (*See id*.) Plaintiff further asserts that Defendant Malone and Defendant Miller's silence regarding the exculpatory facts of Plaintiff's whereabouts when the stalking began allowed Plaintiff to be imprisoned for approximately eight months. (*Id.*) As for Defendants' assertion of qualified immunity, Plaintiff argues Defendant Malone's actions in arresting Plaintiff were objectively unreasonable in light of the fact that Plaintiff was incarcerated when the stalking began. (*Id.*)

### A. Issue Preclusion Based on Contested Preliminary Hearing

Pursuant to 28 U.S.C. § 1738, the Court will apply Tennessee law in determining whether the finding of probable cause at the contested preliminary hearing or the grand jury indictment preclude re-litigation of probable cause. *See Haring v. Prosise*, 462 U.S. 306, 311 (1983) (explaining that 28 U.S.C. § 1738 "generally requires 'federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.'") (citing *Allen v. McCurry*, 449 U.S. 90, 96 (1980)).

The doctrine of issue preclusion, or collateral estoppel, is designed to prevent re-litigation of an issue that has already been raised and determined in an earlier proceeding between the same parties. *See Dickerson v. Godfrey*, 825 S.W.2d 692, 694 (Tenn. 1992). Determining whether collateral estoppel applies is a question of law. *Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009).

To successfully invoke collateral estoppel, a party must prove: (1) the issue to be precluded is identical to the issue decided in an earlier proceeding; (2) the issue was "actually raised, litigated, and decided on the merits in the earlier proceeding;" (3) the judgment in the earlier proceeding is final; (4) the party against whom collateral estoppel is raised was a party, or in privity with a party, in the earlier proceeding; and (5) the party against whom collateral estoppel is raised must have had a "full and fair opportunity in the earlier proceeding to contest the issue." *See Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102, 107 (Tenn. 2016) (citing *Mullins*, 294 S.W.3d at 535).

Here, Defendants claim the issue of probable cause was already decided at a preliminary hearing. In Tennessee, "the preliminary hearing is a probable cause hearing." Tenn. R. Crim. P. 51, Advisory Commission Comments. As such, the issue at the preliminary hearing, probable cause, is identical to the issue sought to be precluded by Defendants. In addition, the finding of probable cause by the state court in the preliminary hearing became a valid final judgment upon the court's binding of the case over to the grand jury, as a finding of probable cause was the only issue the court had to resolve. *See Frank Rudy Heirs Assoc. v. Sholodge, Inc.*, 967 S.W.2d 810, 813 (Tenn. Ct. App. 1997) (explaining that a final judgement requires an order on all claims and rights). Further, the party against whom collateral estoppel is sought, Plaintiff, was a party in the preliminary hearing, satisfying the fourth prong set forth in *Bowen ex rel. Doe*. *See* 502 S.W.3d at 107. Finally, the issue of probable cause was submitted to and decided by the state court in the preliminary hearing, satisfying the "actually litigated" requirement. *See Mullins*, 294 S.W.3d at 537 (explaining that the "actually litigated" requirement does not require a "full evidentiary and adversarial trial" and is usually satisfied if the issue was raised and actually determined in the prior proceeding).

Thus, the question is whether Plaintiff had a "full and fair opportunity" to contest probable cause at the preliminary hearing.

In a preliminary hearing, the magistrate judge determines whether an offense has been committed and whether there is probable cause to believe the defendant committed it. Tenn. R. Crim. P. 5.1(a)(1). The defendant may cross examine witnesses and introduce evidence, but the magistrate may terminate the hearing once defendant has been afforded an opportunity to do so. Tenn. R. Crim. P. 5.1, Advisory Commission Comments. "The purpose of the hearing is to adjudicate the existence of absence of probable cause, and not to discover the state's case." *Id.*, Advisory Commission Comments.

As the Sixth Circuit Court of Appeals recognized in *Smith v. Thornburg*, a preliminary hearing on probable cause can preclude later litigation on the issue when the state provides an opportunity for the accused to contest probable cause and the accused actually does so. *See* 136 F.3d 1070, 1077 (6th Cir. 1998). A defendant, however, may choose not to contest probable cause at a preliminary hearing for strategic decisions and such decisions should not have a preclusive effect. *See Diamond v. Howd*, 288 F.3d 932, 935–36 (6th Cir. 2002).

Even a contested preliminary hearing might not have a preclusive effect if the hearing was merely a formality or the defendant was unable to adequately contest probable cause. *See id.* (citing *Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987) ("We do not hold that every determination in a preliminary hearing should be given preclusive effect in a subsequent section 1983 action. Some preliminary hearings are little more than formalities."); *Golino v. New Haven*, 950 F.2d 864, 869 (2d Cir. 1991) (finding the issue of probable cause was not actually litigated in a state preliminary hearing because defendant did not have access to the investigative file and the court did not allow defendant to call witnesses or offer evidence beyond cross examination of the

7

state's witnesses); *Whitley v. Seibel*, 676 F.2d 245, 249–50 (7th Cir. 1982) (finding collateral estoppel was not permitted when discovery was unavailable before the hearing and the preliminary probable cause determination could not be appealed)).

Here, Plaintiff has plausibly alleged he did not have a "full and fair opportunity" to contest probable cause at the preliminary hearing. At the hearing, the State called the alleged victim and one of the officers assigned to investigate the case. (*See* Doc. 14-1.)[2] Plaintiff's attorney was able to cross examine the witnesses, but it is not clear that Plaintiff was permitted to present other witnesses or evidence to rebut probable cause. (*See id.*) Defendant Malone, the arresting officer, did not testify and was not subjected to cross examination regarding the potentially exculpatory facts of Plaintiff's whereabouts when the stalking began. (*See* Doc. 14-1.)

In addition, it is unclear if Plaintiff had access to the state's investigative file before the hearing to assist in his cross examinations, further cautioning against allowing collateral estoppel. *See Diamond*, 288 F.3d at 936 ("[G]iven that Diamond was not entitled to discovery before her state preliminary hearing, it is not at all clear that, even if she had participated, her preliminary hearing would support collateral estoppel."); *Smith*, 136 F.3d at 1077 n.10 ("The dissent contends that the record reveals Smith did not avail himself of a full adversary proceeding. Quite to the contrary, the record establishes that Smith's counsel arrived at the preliminary hearing ready to try the case.") Construing the facts in the Plaintiff's favor, the record does not demonstrate that Plaintiff was prepared and able to fully contest the issue of probable cause at the preliminary hearing. Thus, Defendants' motion to dismiss for failure to state a claim based on issue preclusion from the preliminary hearing is **DENIED**.

---

[2] As discussed above, consideration of public records does not transform a motion to dismiss into a motion for summary judgment. *See supra* § II.

### B. Issue Preclusion Based on Grand Jury Indictment

The function of a grand jury is to determine, based on the evidence presented to it, whether there is probable cause to believe that an offense has been committed sufficient to indict an individual for a criminal offense. *See State v. Hudson*, 487 S.W.2d 672, 674 (Tenn. Crim. App. 1972). "It has long been settled that 'the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer.'" *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002) (citing *Ex parte United States*, 287 U.S. 241, 250 (1932)). Courts have generally applied this rule unless there is evidence that officers "knowingly or recklessly present[ed] false testimony to the grand jury to obtain the indictment." *Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015).

Here, Defendants contend that the grand jury indictment charging Plaintiff with aggravated stalking constituted a conclusive finding of probable cause. Plaintiff's complaint, however, does not claim probable cause was lacking for the indictment, but rather that Defendant Malone lacked probable cause at the time of the arrest. (*See* Doc. 1.) As the public record cited by Defendants demonstrates, Plaintiff was arrested on March 29, 2018, but was not indicted by the grand jury until July 11, 2018. (Doc. 15.) A finding of probable cause by the grand jury does not necessarily guarantee probable cause existed at the time of a prior arrest; courts have only held it conclusively establishes probable cause for later actions. *See, e.g., Higgason*, 288 F.3d at 877 (dismissing due process claim because plaintiff alleged he was indicted without probable cause, but grand jury indictment conclusively determined that issue); *Gonzalez v. Kovacs*, 687 F. App'x 466, 470 (6th Cir. 2017) (affirming dismissal of claims for false arrest and malicious prosecution because both followed a grand jury finding of probable cause); *Cook v. McPherson*, 273 F. App'x 421, 423 (6th Cir. 2008) (holding that grand jury indictment was dispositive of a malicious prosecution claim).

To survive a 12(b)(6) motion to dismiss, Plaintiff must only allege sufficient facts to state a plausible claim. *See Twombly*, 550 U.S. at 570. The public record demonstrates Defendant Malone arrested Plaintiff nearly four months before a grand jury indicted Plaintiff for aggravated stalking. (*See* Docs. 1, 14-1.) Construing the facts in Plaintiff's favor, additional investigations to establish probable cause could have been conducted between the Plaintiff's arrest and the grand jury indictment. At the time of the arrest, however, Defendant Malone knew Plaintiff was incarcerated when the stalking began, allegedly eliminating Plaintiff as a suspect. (Doc. 1.) Thus, Plaintiff's complaint has plausibly alleged a claim that Defendant Malone lacked probable cause when he arrested Plaintiff.

Accordingly, Defendants' motion to dismiss based on issue preclusion from the grand jury indictment is **DENIED**.

### C.     Qualified Immunity

Qualified immunity protects government officials performing discretionary functions from liability for civil damages when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citing *Procunier v. Navarette*, 434 U.S. 555, 565 (1978); *Wood v. Strickland*, 420 U.S. 308, 322 (1975)). Qualified immunity is designed to balance the ability of plaintiffs to file suits for damages and hold officials accountable against the significant costs of such lawsuits, including litigation expenses, diversion of government resources, and danger of inhibiting public officials' ability to discharge their duties. *See Harlow*, 457 U.S. at 814. The privilege of qualified immunity is immunity from suit, not simply a defense to liability. *See Saucier v. Katz*, 533 U.S. 194, 200–01 (2001) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*)). While the privilege of qualified immunity should be "'resolved at the earliest possible point,' . . . that point

is usually summary judgment and not dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 433–44 (6th Cir. 2015).

Here, Plaintiff's factual allegations, taken as true, demonstrate a violation of a clearly established constitutional right.

Plaintiff alleges Defendant Malone's arrest and detention of Plaintiff violated his Fourth, Fifth, and Fourteenth Amendment rights to be free from false arrest and/or seizure, to be free from unreasonable searches and seizures, and not to be deprived of liberty without due process of law. The Fourth Amendment, applicable to the states through the Fourteenth Amendment, protects all individuals from arbitrary governmental invasions by establishing "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *See Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018); *Wolf v. People of the State of Colo.*, 338 U.S. 25, 28 (1949) (applying the Fourth Amendment to the states). "The Fourth Amendment protects the right of individuals to be free from improper arrest and detention." *Logsdon v. Haines*, 492 F.3d 334, 340 (6th Cir. 2007). While the Fifth Amendment's Due Process Clause applies only to federal government actors, *see Bartkus v. People of State of Ill.*, 359 U.S. 121, 124 (1959), the Fourteenth Amendment's Due Process Clause requires state actors to follow appropriate procedures in deciding to "deprive any person of life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). Standards and procedures for arrest and detention are derived from the Fourth Amendment. *See Gerstein v. Pugh*, 420 U.S. 103, 111 (1975).

Plaintiff's complaint alleges Defendant Malone was "aware that Plaintiff could not be the person that committed the aforementioned crime" when arresting and detaining Plaintiff. (Doc. 1.) Plaintiff is thus alleging Defendant Malone lacked probable cause when arresting Plaintiff.

Assuming that is true, Plaintiff has alleged a violation of his Fourth Amendment right to be free from arrests and detentions unsupported by probable cause.

Turning to the second prong, the right to be free from an arrest and detention unsupported by probable cause was "clearly established" when Defendant Malone arrested Plaintiff. In order to effect an arrest, a police officer must have probable cause, meaning evidence "sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense." *See Gerstein*, 420 U.S. at 111–12 (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). To establish probable cause, a police officer cannot "turn a blind eye" to exculpatory evidence. *See Ahlers v. Schebil*, 188 F.3d 365, 372 (6th Cir. 1999). The Sixth Circuit has held the law is clearly established "that, absent probable cause to believe that an offense had been committed, was being committed, or was about to be committed, officers may not arrest an individual." *Logsdon*, 492 F.3d at 343 (citing *Gardenhire v. Schubert*, 205 F.3d 303, 313 (6th Cir. 2000)) (internal quotations omitted).

Taking Plaintiff's allegations as true, Defendant Malone knew Plaintiff was incarcerated when the stalking began, which necessarily eliminated Plaintiff as a suspect and undermined the probable cause needed to arrest him. (Doc. 1.) Defendants assert that the victim personally identified Plaintiff as the perpetrator on March 28, 2018, which Defendants claim established probable cause and outweighed any "inconsistencies" in her prior statements to police. (Doc. 14.) At the motion to dismiss stage, however, a court must accept all allegations in the complaint as true and construe all facts in Plaintiff's favor. *See Grindstaff*, 133 F.3d at 421. Construing the facts in the police report in Plaintiff's favor, the victim could have misidentified Plaintiff on March 28, 2018, as Plaintiff suggested to Defendant Malone before the arrest. (*Id.*) In contrast, Defendant Malone knew Plaintiff was incarcerated in November 2017, when the victim told police the

stalking began, and thus that Plaintiff allegedly could not have been the perpetrator. (*Id.*) As such, Plaintiff has sufficiently alleged Defendant Malone lacked probable cause to believe Plaintiff committed the offense, in violation of "clearly established" constitutional right to be free from arrest absent probable cause.

Accordingly, the Defendants' motion to dismiss the claims against Defendant Malone under qualified immunity are **DENIED**.

### D. Absolute Witness Immunity

Defendants also assert Defendant Malone is entitled to absolute witness immunity. (Doc. 15.) Absolute immunity protects judges, advocates, and witnesses from subsequent damages litigation based on their participation in the judicial process. *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983). The purpose of the immunity is to ensure all participants in the judicial process can "perform their respective functions without harassment or intimidation." *Id.* (citing *Butz v. Economou*, 438 U.S. 478, 512 (1978)).

Here, Plaintiff has not alleged any claims against Defendant Malone based on his testimony as a witness. (*See* Doc. 1.) Plaintiff's allegations are based on Defendant Malone's arrest and detention of Plaintiff. (*Id.*) As a result, absolute witness immunity is inapplicable in this case. Accordingly, the Defendants' motion to dismiss the claims against Defendant individually under absolute witness immunity are **DENIED**.

## IV. CONCLUSION

The Court will **DENY** Defendants' motion to dismiss (Doc. 14).

**An appropriate order will enter.**

**/s/**
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**