UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

| | | |
|---|---|---|
| CLAYTON BOUCHER, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | No. 2:19-cv-45 |
| v. | ) | |
| | ) | Judge Collier |
| JOHNSON CITY, TENNESSEE, SHANE | ) | |
| MALONE, *in his individual and official* | ) | Magistrate Judge Steger |
| *capacities*, and PAUL MILLER, *in his* | ) | |
| *individual capacity,* | ) | |
| | ) | |
| *Defendants.* | ) | |

## **M E M O R A N D U M**

Before the Court is a motion for summary judgment by Defendant Shane Malone in his individual capacity ("Officer Malone"). (Doc. 32.) Plaintiff has responded in opposition (Doc. 35) and the time to file a reply has expired. *See* E.D. Tenn. L.R. 7.1(a). For the reasons outlined below, the Court will **GRANT** Officer Malone's motion for summary judgment.

**I.    BACKGROUND**

On March 28, 2018, Officer Malone, a detective with the Johnson City Police Department ("JCPD"), was assigned to investigate a report of harassment and/or stalking of an employee at the Food City store on South Roan Street. (Doc. 33-1 [Malone Decl.] at 4.)

JCPD was first informed of the alleged harassment on March 26, 2018, when Chasity Thompson reported that her seventeen-year-old daughter, Brooklyn Burkett, was being harassed by a white male while Ms. Burkett was working at Food City.[1] (*Id.* at 1–2.) Ms. Burkett stated

---

[1] Courts generally cannot consider hearsay statements in deciding motions for summary judgment. *See Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994). However, Malone has moved for summary judgment on the basis of qualified immunity, which requires the Court to consider the facts known to Malone at the time of Plaintiff's arrest. Thus, statements from

that the man appeared to be in his early thirties, was about five feet and five inches tall, and weighed around one hundred eighty pounds. (*Id.* at 2.) She also stated he carried a pink and purple backpack and seemed to be homeless. (*Id.*) Ms. Thompson explained that she needed a police report so the Food City store managers could take action to protect her daughter. (*Id.*) The police officer writing the report told Ms. Burkett to call 911 if the man returned to the store. (*Id.*)

Two days later, on March 28, 2018, JCPD officers were called to Food City because the alleged harasser had returned. (*Id.*) The three responding officers spoke with Ms. Burkett, Ms. Thompson, the store managers, and the suspect. (*Id.* at 2–3.)

Ms. Burkett provided a written statement to police describing the alleged harassment she had experienced. (*Id.* at 18.) She explained that in November 2017, she was in the Bakery Deli section of Food City when the suspect started a conversation with her. (*Id.*) The suspect then left the Bakery Deli, but returned to tell Ms. Burkett she was pretty, at which point Ms. Burkett walked away. (*Id.*) Later that night, the store received a call from a man claiming to be Ms. Burkett's friend. (*Id.*) The man explained that he and Ms. Burkett were supposed to hang out that night, but he had lost her phone number. (*Id.*) The call was transferred to Ms. Burkett and the caller told her he was "the man at the deli." (*Id.*) The man then asked Ms. Burkett for her address so they could hang out, which prompted Ms. Burkett to hang up the phone. (*Id.*)

Ms. Burkett explained that she did not see the suspect for about a month, but then he began visiting the store again and would stay for a couple of hours at a time. (*Id.* at 19.) Ms. Burkett

---

witnesses and incident reports are used solely to aid the Court in determining whether qualified immunity applies, and are not used for the truth of the matter asserted therein. *See Shipp v. United States*, 212 F. App'x 393, 401–02 (6th Cir. 2006) (explaining that statements offered to show an officer had probable cause for an investigation were not hearsay evidence); *Jerome v. Crum*, 695 F. App'x 935, 936 n.1 (6th Cir. 2017) (explaining that the use of statements to determine whether officer had probable cause was permissible at the summary judgment stage because the statements were not offered for their truth).

stated that during this time the suspect tried to speak to her twice. (*Id.*) In early March 2018, while Ms. Burkett was ringing up a customer's purchases, the suspect asked her if she was the only employee up front. (*Id.*) The store's front-end manager instructed Ms. Burkett to go to the back of the store while the manager rang up the suspect's purchases. (*Id.*) Then, on March 25, 2018, the suspect tried to get into Ms. Burkett's check-out line, but her front-end manager again intervened by opening a new check-out line. (*Id.*)

Mr. Presley, the assistant store manager, also provided a written statement to police on March 28, 2018. (*Id.* at 20.) Mr. Presley explained that on March 25, 2018, he was informed that the man who had been bothering Ms. Burkett was back at the store. (*Id.*) Mr. Presley observed the suspect sitting in the Bakery Deli area and later encountered him in an aisle. (*Id.*) Mr. Presley then followed the suspect to the front of the store as he walked towards Ms. Burkett's check-out line before the front-end manager intervened and opened a new check-out line. (*Id.*)

After the March 28, 2018, incident, police identified the suspect as Plaintiff, Clayton Boucher. (*Id.* at 13.)

Once he was assigned to the matter, Officer Malone reviewed Plaintiff's criminal history, the incident reports, and the witness statements. (*Id.* at 4.) Officer Malone learned that Plaintiff was a registered sex offender, had been charged with seven counts of aggravated statutory rape, was in jail in November 2017, and had pleaded guilty to one count of aggravated statutory rape in December 2017, at which point he was released from jail. (*Id.*) Officer Malone then had Plaintiff brought in for questioning. (*Id.*)

Plaintiff told Officer Malone he was homeless and had been going to the Food City store on South Roan Street since December 2017. (*Id.* at 26, 28 [Pl. Interview Tr. 6:6–7, 8:19–23].) He explained he went to Food City six days a week, usually visiting after work, and would stay there

3

for up to four hours at a time. (*Id.* at 26, 28 [Pl. Interview Tr. 6:14–15, 8:22–24].) Plaintiff stated that he had to walk approximately eight miles to get to the store. (*Id.* at 27, 28 [Pl. Interview Tr. 7:22–25, 8:6–12].) Plaintiff denied any wrongdoing, asserted Ms. Burkett must have confused him for someone else, and denied even knowing who Ms. Burkett was. (*Id.* at 25, 30 [Pl. Interview Tr. 5:13–24, 10:21–24].) Ultimately, Officer Malone arrested Plaintiff for aggravated stalking. (*Id.* [Malone Decl.] at 5.)

On March 26, 2019, Plaintiff filed suit against Officer Malone, among others, alleging claims of unlawful seizure and false imprisonment pursuant to 42 U.S.C. § 1983, a claim of deliberate indifference, and a state law claim of reckless infliction of emotional distress. (Doc. 1.)

On January 31, 2020, Officer Malone filed a motion for summary judgment in his individual capacity. (Doc. 32.) Officer Malone contends that, based on the totality of the circumstances, he had probable cause to arrest Plaintiff, or at the least, a reasonable officer would have believed probable cause existed for an arrest. (Doc. 33.) As a result, Officer Malone asserts he is entitled to qualified immunity and the claims against him in his individual capacity should be dismissed. (*Id.*)

In response, Plaintiff contends Officer Malone is not entitled to qualified immunity because there was no probable cause to arrest him and a reasonable officer would have known probable cause was lacking. (Doc. 37.) Specifically, Plaintiff argues Officer Malone should have immediately eliminated him as a suspect because he was incarcerated in November 2017, when the stalking reportedly began. (*Id.*) By arresting him in spite of this exculpatory information, Plaintiff asserts Officer Malone violated his constitutional rights and the claims against Officer Malone should not be dismissed. (*Id.*)

## II.  STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing no genuine issue of material fact remains. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003).

If the moving party meets its initial burden, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). A genuine issue for trial exists if there is "evidence on which the jury could reasonably find for the plaintiff." *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)) (internal quotations omitted). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson*, 477 U.S. at 248–49. The court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). If the court concludes, based on the record, that a fair-minded jury could not return a verdict in favor of the non-movant, the court should grant summary judgment. *Anderson*, 477 U.S. at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. DISCUSSION

Officer Malone has moved for summary judgment on the basis of qualified immunity. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

An officer is entitled to qualified immunity "if (1) the officer[] did not violate any constitutional guarantees or (2) the guarantee, even if violated, was not 'clearly established' at the time of the alleged misconduct." *Arrington-Bey v. City of Bedford Heights, Ohio*, 858 F.3d 988, 992 (6th Cir. 2017). In evaluating whether an officer is entitled to qualified immunity, courts have discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

The Court will first consider Officer Malone's assertion of qualified immunity as to Plaintiff's § 1983 claims and will then turn to Plaintiff's claims of deliberate indifference and reckless infliction of emotional distress.

### A. 42 U.S.C. § 1983 Claims

Plaintiff claims Officer Malone unlawfully seized and imprisoned him in violation of the Fourth Amendment.[2] (Doc. 1 at 4-5 [Counts I–II].) In response, Officer Malone asserts he is

---

[2] Because both of Plaintiff's § 1983 claims turn on whether there was probable cause for the arrest or whether a reasonable officer would have concluded there was probable cause, the Court will consider the claims together. *See Reid v. West*, No. 2:14-CV-334, 2015 WL 268980, at *4 n.2 (E.D. Tenn. Jan. 21, 2015) ("False arrest and false imprisonment claims are functionally the same and the Court applies the same analysis to both claims."); *Gumble v. Waterford Twp.*, 171 F. App'x 502, 507 (6th Cir. 2006) (considering false arrest and false imprisonment claims together).

6

entitled to qualified immunity on Plaintiff's § 1983 claims because he had probable cause to arrest Plaintiff, or, in the alternative, a reasonable officer would have believed probable cause existed to arrest Plaintiff.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause. . . ." U.S. Const. amend. IV. "Because arrests are 'seizures' of 'persons,' they must be reasonable under the circumstances." *District of Columbia v. Wesby*, 138 S. Ct. 577, 585–86 (2018) (citing *Payton v. New York*, 445 U.S. 573, 585 (1980)). A warrantless arrest is reasonable under the Fourth Amendment when it is "in a public place for a felony, or a misdemeanor committed in the officer's presence . . . if the arrest is supported by probable cause." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003).

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Probable cause requires a "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005) (internal quotations and citations omitted); *see also Gates*, 462 U.S. at 243 n.13 (explaining that probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.").

In evaluating whether an officer had probable cause for an arrest, the Court must look to the totality of the circumstances and determine whether, at the time of the arrest, "the facts and circumstances within [the officer's] knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense." *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964). An

7

officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). !

Here, Officer Malone contends there was probable cause to arrest Plaintiff for harassment, stalking, or aggravated stalking under Tennessee law. (Doc. 33.) However, only the latter two charges could have established probable cause for a warrantless arrest under these circumstances. Officer Malone could not have lawfully arrested Plaintiff for harassment without a warrant because no officers were present at the Food City store when the alleged conduct took place and the alleged conduct does not trigger the felony provision of the harassment statute.[3] *See Pringle*, 540 U.S. at 370. In contrast, the felony provision of the stalking statute did apply in this case,[4] and aggravated stalking is always a felony offense. *See* Tenn. Code Ann. § 39-17-315(b), (c)(2). Thus, if Officer Malone had probable cause to arrest Plaintiff for stalking or aggravated stalking, then he is entitled to qualified immunity. *See Arrington-Bey*, 858 F.3d at 992.

Stalking is defined as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested, and that actually causes the victim to

---

[3] Harassment is a Class A misdemeanor, or lower, unless the harassment is committed by an individual who is incarcerated, on pretrial diversion, probation, community correction, or parole, and the person being harassed was the victim of the individual's prior crime. *See* Tenn. Code Ann. § 39-17-308. While it appears Plaintiff was on probation when he allegedly harassed Ms. Burkett, there is no evidence that the crime for which he was on probation involved Ms. Burkett. (*See* Doc. 33-1 at 4.)

[4] Stalking is a Class A misdemeanor unless "the defendant, at the time of the offense, was required to or was registered with the Tennessee bureau of investigation as a sexual offender, violent sexual offender or violent juvenile sexual offender, as defined in § 40-39-202[,]" at which point stalking is a Class E felony. Tenn. Code Ann. § 39-17-315(b). Plaintiff was a registered sex offender at the time of the arrest, and thus the felony provision of the statute applies. (Doc. 33-1 at 4.)

feel terrorized, frightened, intimidated, threatened, harassed, or molested[.]" Tenn. Code Ann. § 39-17-315(a)(4). The statute defines "harassment" as:

> conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable person to suffer emotional distress, and that actually causes the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose[.]

Tenn. Code Ann. § 39-17-315(a)(3).

> Unconsented contact includes:
>
> any contact with another person that is initiated or continued without that person's consent, or in disregard of that person's expressed desire that the contact be avoided or discontinued. Unconsented contact includes, but is not limited to, any of the following:
>
> > (A) Following or appearing within the sight of that person;
> > (B) Approaching or confronting that person in a public place or on private property;
> > (C) Appearing at that person's workplace or residence;
> > (D) Entering onto or remaining on property owned, leased, or occupied by that person;
> > (E) Contacting that person by telephone;
> > (F) Sending mail or electronic communications to that person; or
> > (G) Placing an object on, or delivering an object to, property owned, leased, or occupied by that person[.]

Tenn. Code Ann. § 39-17-315(a)(5).

Finally, emotional distress is defined as "significant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling." Tenn. Code Ann. § 39-17-315(a)(2).

Aggravated stalking occurs when a person commits the offense of stalking and:

> (A) In the course and furtherance of stalking, displays a deadly weapon;
> (B) The victim of the offense was less than eighteen (18) years of age at any time during the person's course of conduct, and the person is five (5) or more years older than the victim;
> (C) Has previously been convicted of stalking within seven (7) years of the instant offense;

9

> (D) Makes a credible threat to the victim, the victim's child, sibling, spouse, parent or dependents with the intent to place any such person in reasonable fear of death or bodily injury; or
> (E) At the time of the offense, was prohibited from making contact with the victim under a restraining order or injunction for protection, an order of protection, or any other court-imposed prohibition of conduct toward the victim or the victim's property, and the person knowingly violates the injunction, order or court-imposed prohibition.

Tenn. Code Ann. § 39-17-315(c)(1).

Officer Malone relies mainly on statements from eyewitnesses in support of his assertion that probable cause existed for the arrest. Eyewitness statements "are generally entitled to a presumption of reliability and veracity" because they are based on first-hand observations. *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999). Thus, an in-person identification alone will provide sufficiently reliable evidence to support probable cause "unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation." *Id.* (internal quotations and citations omitted).

As discussed above, Ms. Burkett provided detailed allegations regarding Plaintiff's presence at the store and his repeated attempts to talk with her. She also provided a clear description of the suspect's appearance, which matched Plaintiff's appearance, and identified Plaintiff as the alleged harasser. The assistant manager, Mr. Presley, described his observations of Plaintiff at the store, which supported Ms. Burkett's statements. Nothing from the witnesses' statements suggests they were lying, unable to accurately describe Plaintiff, or mistaken in identifying Plaintiff, and Plaintiff has not offered any reasons to discredit their statements.

In addition, Plaintiff admitted to Officer Malone that he had been going to the Food City on South Roan Street six days a week since December 2017, and that he would stay at the store for up to four hours at a time. (Doc. 33-1 at 26, 28 [Pl. Interview Tr. 6:6–7, 8:19–23].) This

10

admission confirms Ms. Burkett's statement regarding his presence at the store and strengthens her ability to identify Plaintiff as the alleged harasser. Because of the lack of any reason to discredit the witnesses' statements, Officer Malone was entitled to rely on them to establish probable cause.

Based on these statements, Officer Malone had reason to believe Plaintiff was repeatedly showing up at the Food City store and had attempted to talk to Ms. Burkett on multiple occasions, including once asking her for her home address. As a result, Officer Malone had clear evidence of continuing unconsented contact. *See* Tenn. Code Ann. § 39-17-315(a)(3), (a)(5)(C). In Ms. Burkett's first report to police, she stated that Plaintiff was harassing her and making her feel uncomfortable. (Doc. 33-1 at 9.) This statement, combined with Ms. Burkett's willingness to involve the police on two occasions, provided evidence that Plaintiff's actions caused Ms. Burkett significant distress and that she subjectively felt "terrorized, frightened, intimidated, threatened, harassed, or molested." *See* Tenn. Code Ann. § 39-17-315(a)(4). In addition, Officer Malone knew Plaintiff was a registered sex offender, triggering the felony provision of the stalking statute, and that Ms. Burkett was seventeen years old and twelve years younger than Plaintiff, satisfying the heightened requirements for aggravated stalking. *See* Tenn. Code Ann. § 39-17-315(b), (c)(1)(B). Finally, a reasonable person would have felt "terrorized, frightened, intimidated, threatened, harassed, or molested," and likely suffered emotional distress, if a stranger began showing up at his or her place of employment six days a week for over three months after attempting to obtain his or her home address. Even viewing the evidence in the light most favorable to Plaintiff, the totality of the circumstances provided sufficient basis for Officer Malone to reasonably believe Plaintiff had engaged in stalking or aggravated stalking.

Plaintiff does not dispute the witnesses' statements or attempt to undermine Officer Malone's reliance on them. Instead, Plaintiff argues there was no probable cause to arrest him because he was incarcerated in November 2017, when Ms. Burkett said the harassment began.

While officers may not "turn a blind eye" to exculpatory evidence, *Wilson v. Morgan*, 477 F.3d 326, 336 (6th Cir. 2007), Plaintiff's incarceration in November 2017 does not negate the probable cause to arrest him in March 2018. Although Ms. Burkett stated the first incident occurred in November 2017, she also described Plaintiff's repeated visits to the store starting in December 2017 and attempts to talk to her in March 2018. In addition, Ms. Burkett provided a detailed description of her harasser, which matched Plaintiff's appearance, and identified Plaintiff as her alleged harasser to police the day before Plaintiff's arrest. Further, Plaintiff's admission that he visited the store six times a week from December 2017 until March 2018 bolstered Ms. Burkett's identification of Plaintiff as the alleged harasser. Even viewing the evidence in the light most favorable to Plaintiff, it is highly unlikely that Plaintiff was misidentified, and instead the evidence suggests Ms. Burkett misremembered when the alleged harassment began.

However, even if there were merit to Plaintiff's claim of mistaken identity due to his November 2017 incarceration, "an officer is 'under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation,' if the initially discovered facts provide probable cause." *Meakens v. Benz*, 515 F. App'x 414, 418 (6th Cir. 2013) (quoting *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988)). Because Officer Malone had probable cause to arrest Plaintiff based on the witnesses' statements alone, *see Ahlers*, 188 F.3d at 370, he did not have to refrain from arresting Plaintiff when Plaintiff claimed to be misidentified.

12

Based on the witnesses' statements and identifications, combined with Plaintiff's admissions, the undisputed evidence shows Officer Malone had probable cause to arrest Plaintiff for either stalking or aggravated stalking under Tennessee law. Accordingly, Officer Malone has established he did not violate Plaintiff's Fourth Amendment right to be free from unlawful seizures, and he is entitled to qualified immunity.

Further, even if Officer Malone lacked probable cause to arrest Plaintiff, there is no evidence to suggest the right violated was "clearly established" at the time of the arrest.

A right is "clearly established" where there is existing precedent that places "the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotations and citations omitted); *see also Ohio Civil Serv. Emps. Ass'n v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988) ("[T]o find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals, or itself."). Courts must define the right with specificity, particularly when rights implicate the Fourth Amendment and probable cause. *Wesby*, 138 S. Ct. at 590 (explaining that the imprecise nature of probable cause means "officers will often find it difficult to know how the general standard of probable cause applies in 'the precise situation encountered.'") (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017)). Thus, in the context of a warrantless arrest, a right is "clearly established" when it is so well defined as to "obviously resolve whether the circumstances with which [the particular officer] was confronted . . . constitute[d] probable cause." *Id.* (internal quotations and citations omitted).

Here, there is no evidence to suggest a reasonable officer confronting the same situation would have believed there was no probable cause to arrest Plaintiff for stalking or aggravated stalking. *See Wesby*, 138 S. Ct. at 590. In fact, established case law suggests the opposite. Ms. Burkett described a pattern of repeated harassment, provided a detailed description of the suspect's

13

appearance that matched Plaintiff, and identified Plaintiff as her harasser. Ms. Burkett's identification was bolstered by Plaintiff's admission that he had been going to the Food City store six days a week since December 2017. The Sixth Circuit Court of Appeals has explicitly recognized that an eyewitness identification alone can establish probable cause for an arrest. *See Ahlers*, 188 F.3d at 370. Thus, the totality of the circumstances demonstrates a reasonable officer would have believed there was probable cause to arrest Plaintiff. *See Wesby*, 138 S. Ct. at 591. As a result, Officer Malone did not violate "clearly established" law when he arrested Plaintiff.

Even construing the evidence in the light most favorable to Plaintiff, Officer Malone has demonstrated he is entitled to qualified immunity and Plaintiff has not offered any evidence to demonstrate a reasonable jury would disagree. Accordingly, Plaintiff's § 1983 claims against Officer Malone will be dismissed on the basis of qualified immunity.

### B. Reckless Infliction of Emotional Distress

Plaintiff has also asserted a state law claim against Officer Malone for reckless infliction of emotional distress. (Doc. 1 at 5–6 [Count III].) Plaintiff contends Officer Malone was reckless in his actions and could have avoided the false arrest and imprisonment by checking available records and learning that Plaintiff was incarcerated at the time the stalking purportedly began. (*Id.*) Officer Malone asserts he is entitled to qualified immunity on this claim for the same reasons he is entitled to qualified immunity on Plaintiff's § 1983 claims—even with the knowledge of the November 2017 incarceration, Officer Malone still had probable cause to arrest Plaintiff, or in the alternative, a reasonable officer would have believed probable cause existed for an arrest. (Doc. 33.)

Plaintiff failed to address Officer Malone's arguments on the claim for reckless infliction of emotional distress in his response to the motion for summary judgment. (*See* Doc. 37.) A

"[f]ailure to respond to a motion may be deemed a waiver of any opposition to the relief sought." E.D. Tenn. L.R. 7.2. Indeed, a failure to address a claim in a response to summary judgment can be considered an abandonment of the claim. *See, e.g.*, *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.") (collecting cases).

Even if Plaintiff had not abandoned his claim for reckless infliction of emotional distress, the Court finds Plaintiff has failed to state a plausible claim for reckless infliction of emotional distress.

Under Tennessee law, reckless infliction of emotional distress is not a separate and distinct tort from intentional infliction of emotional distress. *See Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 n.6 (Tenn. 2012). To prove an intentional infliction of emotional distress claim, a plaintiff must show that "the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *See Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004); *Leach v. Taylor*, 124 S.W.3d 87, 92 (Tenn. 2004). The burden to show the conduct was outrageous "is an exacting standard requiring the plaintiff to show that the defendant's conduct is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

Here, Plaintiff contends Officer Malone acted recklessly by arresting him without checking any records to determine if Plaintiff was able to engage in the alleged harassment in November 2017. However, in his declaration, Officer Malone states that he did review Plaintiff's criminal

15

Case 2:19-cv-00045-CLC-CRW   Document 41   Filed 05/20/20   Page 15 of 17   PageID #: 285

record and was aware of his incarceration in November 2017. (Doc. 33-1 [Malone Decl.] at 4.) Further, as the Court discussed above, Plaintiff's incarceration in November 2017 did not preclude Officer Malone from arresting Plaintiff in March 2018 based on eyewitness statements. Even construing the evidence in the light most favorable to Plaintiff, there is no evidence Officer Malone engaged in any reckless conduct nor that Officer Malone's arrest of Plaintiff constituted such extreme and outrageous conduct "as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Miller*, 8 S.W.3d at 614 (internal quotations and citations omitted). Accordingly, Plaintiff's claim for reckless infliction of emotional distress will be dismissed.

### C. Deliberate Indifference

Finally, Plaintiff has asserted a claim against Officer Malone for deliberate indifference. (Doc. 1 at 6 [Count IV].) Officer Malone asserts there is no free-standing deliberate indifference claim without reference to a constitutional right, and he argues the only applicable constitutional right, the right to be free from unreasonable seizures, does not provide a basis for the claim because he had probable cause to arrest Plaintiff. (Doc. 33.)

In his response to the motion for summary judgment, Plaintiff did not address Officer Malone's contention that his deliberate indifference claim fails as a matter of law. (Doc. 37.) As discussed above, a "[f]ailure to respond to a motion may be deemed a waiver of any opposition to the relief sought[,]" and can be considered an abandonment of the claim if the failure to respond occurs at the summary judgment stage. *See* E.D. Tenn. L.R. 7.2; *Brown*, 545 F. App'x at 372.

Further, the Court agrees with Officer Malone that there is no free-standing deliberate indifference claim. Rather, deliberate indifference is a higher standard of fault typically applied in claims against state actors under the Eight and Fourteenth Amendments. *See Shadrick v.*

*Hopkins Cty., Ky.*, 805 F.3d 724, 737 (6th Cir. 2015) (explaining that Eight Amendment claims require application of the deliberate indifference standard, in which a plaintiff must offer "proof that a municipal actor disregarded a known or obvious consequence of his action") (internal quotations omitted); *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (applying the deliberate indifference standard to Fourteenth Amendment claim).

Accordingly, Plaintiff's deliberate indifference claim against Officer Malone in his individual capacity will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Malone's motion for summary judgment (Doc. 32) will be **GRANTED**. The claims alleged against Officer Malone in his individual capacity will be **DISMISSED.**

**An appropriate order will enter.**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**